FILED

JAN 31 1990

ROBERT D. DENNIS
CLERK, U.S. DISTRICT COURT
BY Kathleen Buck

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

```
:::::::::::::::::::::::::::::::
IN RE: SAVINGS INVESTMENT         :    MDL NO. 718
SERVICE CORPORATION LOAN          :
COMMITMENT LITIGATION             :
:::::::::::::::::::::::::::::::   :
                                  :
EDWIN J. MUSIL, JR.               :
                                  :
         VS.                      :    NO. CIV-87-560
                                  :
THE HEITNER CORPORATION, et al.   :
                                  :
:::::::::::::::::::::::::::::::
```

WEINER, J.                                            JANUARY 22, 1990

### MEMORANDUM OPINION AND ORDER

In this class action, co-counsel for the Musil class, Sachnoff & Weaver, Ltd. and Green Hoffmann & Dankenbring, and their liaison counsel Hammons & Hunter, have concluded settlements in favor of the class, valued, with accrued interest, in excess of one hundred percent of the face value of the defaulted bonds which engendered the lawsuit.[1] Counsel now move jointly for an award of attorneys' fees and costs to be paid from

---

1. The face value of the bonds was $10 million. As of December 31, 1989, the settlement fund had a value of $10,230,000.00.

the common fund. For the reasons which follow, the court employs the percentage of recovery method to determine the fee petition and awards to counsel for the class a fee of 20% of the settlement fund, plus reimbursement of expenses.

I.

This litigation, and the balance of the cases consolidated in this multidistrict litigation, all arise out of the activities of Savings Investment Service Corporation (SISCorp) in brokering commercial loans and providing standby loan guarantees. The representative plaintiff, Edwin J. Musil, Jr. was a purchaser of City of Provo City Utah Industrial Development Revenue Bonds (Excelsior Hotel Project) Series 1983-A. The class complaint alleged that the offering materials for the Provo Bonds were replete with misrepresentations and omissions of material fact concerning the SISCorp standby commitment and the underlying participation agreements that purportedly secured the bonds. The complaint also alleged material misrepresentations and omissions of fact with respect to the nature and extent of the investigation into the validity of the SISCorp standby commitment conducted by those charged with a duty to do so, and these defendants' knowledge of matters going to the validity and enforceability of the underlying participations that should have merited further inquiry. Later the complaint was amended to include claims against the

- 2 -

developers of the Provo Excelsior Hotel and its four general partners, the firm that did feasibility and marketing studies and the City of Provo City, Utah. Finally, the complaint was again amended to join the law firm which acted as bond counsel, a principle of The Heitner Corporation and the members of the SISCorp board of directors.

After extensive discovery, the adjudication of pretrial motions, and numerous settlement conferences, class counsel entered into settlement agreement with all named defendants with the exception of Bruce Wright, SISCorp's president, who is in bankruptcy and David Namer, who brokered the standby commitment, and who is incarcerated. The settlement process involved complex negotiations necessitated by the fact that many of SISCorp's member institutions were insolvent and placed into receivership, the underwriters and their counsel denied liability, alleging they had been as duped by the SISCorp defendants as were the bondholders, and because several of the SISCorp defendants were under indictment, causing self-incrimination concerns. The final settlement package included receiver certificates issued by the

- 3 -

Federal Savings and Loan Insurance Corporation,[2] and a refinancing agreement for the hotel,[3] as well as cash payments.

## II.

The Supreme Court has recognized that a "litigant who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole". Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); see also Alyeska Pipeline Serv. v. Wilderness Society, 421 U.S. 240, 257 (1975); Mills v. Electric Auto-lite Co., 396 U.S. 375, 393 (1970). This common fund doctrine rests on the perception that individuals who profit from a lawsuit "without contributing to its costs are unjustly enriched at the successful litigant's expense". Boeing Co., 444 U.S. at 478. To prevent this inequitable result, a court may assess fees against the entire fund and thereby spread litigation costs

---

2. The face value of the certificates issued by FSLIC as receiver for those SISCorp shareholders that are insolvent is $592,800.00. Counsel advises the court that the certificates are estimated to have a value of approximately 30% of that amount, or $177,840.00, but the actual value of the certificates is difficult to determine and may be more or less than that amount. The FSLIC has distributed approximately $9,000.00 to the trustee for the benefit of the Musil class.

3. The refinancing totaled $5.5 million. The purchase price included $3.5 million in cash and a $2.0 million dollar note. After payment of outstanding real estate taxes and payment to FSLIC of $290,100.00 to satisfy its claims, the cash proceeds immediately payable to the class and the bondholders amounted to $2,975,400.00. The class and bondholders will share $4,782,00.00 as a result of the hotel sale.

proportionately among those whom the suit benefits. Id. Similarly, the United States Court of Appeals for the Third Circuit has noted that in the class action context, attorneys who create a settlement fund are entitled to recover fees against that fund. "The award of fees under the equitable fund doctrine is analogous to an action in quantum meruit; the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed." Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp. 487 F.2d 161, 165 (3d Cir. 1973) (Lindy I); see also Silberman v. Bogle, 683 F.2d 62, 64 (3d Cir. 1982); Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 110 (3d Cir. 1976) (Lindy II).

Although it is well established that attorneys' fees may be drawn from a fund in court, there persists some controversy regarding the proper method by which the amount of compensation should be calculated. Until 1973, the size of the fee award in both common fund cases and statutory fee shifting cases was left to the court's discretion. "Awards often reflected what the court believed was a 'reasonable percentage' of the amount recovered." Court Awarded Attorney Fees: Report of the Third Circuit Task Force, 108 F.R.D. 237, 242 (1985) (Task Force Report). Although judges at that time utilized a multitude of factors in establishing amounts for fee awards, they relied most heavily on "the size of the fund or the amount of benefit

produced for the class". <u>Id.</u> Yet, given the open-ended and contextual nature of the reasonable percentage standard, it often was maligned as investing unlimited discretion in trial judges, producing inconsistent results and authorizing the collection of windfall profits by attorneys. <u>Id.</u> at 242; <u>see also</u> <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 563 (1986). (<u>Delaware Valley I</u>)

Responding to these criticisms, the Third Circuit, in <u>Lindy I</u> and <u>Lindy II</u>, developed the lodestar method of setting fees. This approach is composed of two steps. First, to determine the "lodestar", the court multiplies the hours spent on the case by a reasonable hourly rate of compensation for each attorney involved. Second, the court adjusts that figure to reflect the contingent nature of the litigation and the quality of the attorney's work. <u>In re Fine Paper Antitrust Litigation</u>, 751 F.2d 562, 583-84 (3d Cir. 1984); <u>Lindy II</u>, 540 F.2d at 113. The Supreme Court, however reasoning that the latter step is largely subsumed within the former, has, arguably, curtailed the availability of contingency and quality enhancements to the lodestar. <u>See</u> <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 483 U.S. 711 (1987) (<u>Delaware Valley II</u>); <u>Delaware Valley I</u>, 478 U.S. at 565.

The Supreme Court has also recognized the propriety of employing the percentage of recovery method in the common fund context. "Unlike the calculation of attorney's fees under the

- 6 -

'common fund doctrine', where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under [fee shifting statutes] reflects the amount of attorney time reasonably expended on the litigation." Blum v. Stenson, 465 U.S. 886, 901 n. 16 (1984); accord, 3 H. Newberg, Newberg on Class Actions 186 (2d Ed. 1985); see also City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) (plurality opinion); Id. at 586 (Powell, J., concurring); Id. at 595 (Rehnquist, J., dissenting). In the wake of Blum, several courts, including the United States Court of Appeals for the Tenth Circuit, have held that the percentage of recovery method is an acceptable basis upon which to calculate fee awards. See Brown v. Phillips Petroleum, 838 F.2d 451, 454 (10th Cir. 1988); see also, Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989); Bebchick v. Washington Metro. Area Transit, 805 F.2d 396, 406 (D.C. Cir. 1986). As there are no circumstances suggesting that the application of the percentage of recovery method would be unjust in these circumstances, it will be the method the court employs to determine the instant petition.

### III.

Certain principles guide our disposition of plaintiffs' motion. First, the district court retains discretion to calculate the fee. Task Force Report, 108 F.R.D. at 256. Courts have allowed attorney compensation ranging from 19 to 45% of the

- 7 -

settlement fund created, see In re TSO Financial Litigation, 1989 U.S. Dist. LEXIS 8253, Appendix A (E.D. Pa July 17, 1989), and one circuit panel has concluded that the appropriate bench mark percentage for fee awards is 25%. Graulty, 886 F.2d at 272; see also 3 H. Newberg, supra, at 190 (stating normal range of common fee awards is between 20 and 30%). In general, the percentage recovery fee should "decrease as the size of the fund increases". Task Force Report, 108 F.R.D. at 256; see also 3 H. Newberg, supra at 190. Second, because of "the potential for conflict of interest between the attorneys seeking compensation and the clients" in the equitable fund context, "the trial court has an independent duty to scrutinize fee applications". Cunningham v. City of McKeesport, 753 F.2d 262, 267 (3d Cir. 1985), vacated, 478 U.S. 1015 (1986), reinstated, 807 F.2d 49 (3d Cir. 1986), cert denied, 481 U.S. 1049 (1987). The court does note, however, that of approximately 1100 class members, the court has received only three letters expressing objection to the request for award of fees, each of them expressing general objections to role of lawyers in our society, rather than specific objections to the amount of attorneys' fees requested herein.

Relevant to the determination of a reasonable fee in a common fund case are the factors announced in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and adopted by the Court of Appeals for the Tenth Circuit. See Brown, 838

- 8 -

F.2d at 456. The <u>Johnson</u> factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee -- this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19. We will briefly discuss each factor.

The time and labor involved to bring this case to final settlement can be characterized as extensive. Each firm devoted significant attorney and paralegal time to conduct the discovery necessary to convince the defendants that settlement would be the most favorable option. The questions involved in the case presented some difficulties. The factual bases of the claims were complex, and complicated the legal issues which the attorneys had to address. The skill requisite to prosecute these claims and conduct the discovery to flesh out the fraud was above that needed in an ordinary securities case because of the bankrupt, insolvent and indicted defendants herein. Because the case required each firm to devote resources, it is arguable that each was precluded from accepting other employment, although we

- 9 -

note neither has so argued to the court in its fee petition. The attorneys' customary fees are recited in their petition and were used by them to calculate their individual lodestars, which we discuss below. No prearranged fees have been averred by the attorneys. Although the class set no time limitations on this case, because the hotel involved was perceived to be a deteriorating asset, the attorneys were under some time constraint in concluding this matter. The results obtained by counsel for the class can be said to be commendable. Considering that the most culpable defendants were financially embarrassed or unreachable, counsel did very well in recovering for the class settlements and interest in excess of one hundred cents on the dollar. This speaks much for their abilities. Their experience and reputations are well known to the court to be good. The nature and extent of the professional relationship with the client is not of primary import in this setting, since most members of the class have had little contact with class counsel. Awards in similar cases are discussed at length below.

   The court has examined both the fee petition submitted by plaintiff' counsel and the entire record of this litigation. Based on that review, we conclude that the class was well served by experienced counsel who effectively prosecuted a case that presented vexing factual, legal and logistical difficulties, but who nonetheless obtained a highly favorable recovery. Petitioners also brought this action to a timely conclusion.

This is precisely the sort of result that the percentage of recovery fee method is intended to foster and stands as a counterexample to complaints about the slow pace of complex litigation. Moreover, plaintiffs' counsel terminated this controversy by settlement and thereby avoided burdening the federal judicial system with a trial and appeals. Because "a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice", McKenzie Constr. Co. v. Maynard, 758 F.2d 97, 101-02 (3d Cir. 1985), courts and legal commentators sensibly have rejected the view that early settlement necessarily should reduce the amount of the fee award. See, e.g., Prandini v. National Tea Co., 557 F.2d 1015, 1019-20 (3d Cir. 1977); Blank v. Talley Indust., 390 F. Supp. 1, 5-6 (S.D.N.Y. 1975); Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv. L. Rev. 658, 660-661 (1956). Indeed, it would be the height of folly to penalize an efficient attorney for settling a case on the ground that less total hours were expended in the litigation.

The court also finds, however, that the percentage of recovery fee should decrease as the size of the common fund increases. The employment of a sliding scale was recommended by the Third Circuit Task Force. 108 F.R.D. at 256. Recognition of this general inverse relationship between fund and fee -- in conjunction with a healthy acknowledgment that the setting of

- 11 -

attorney compensation will never be an exact science and that the percentage of recovery fee approach is extremely particularistic -- assists in explaining the facially disparate award percentages that some critics have identified in common fund cases.  See, Hornstein, supra, 69 Harv. L. Rev. at 664, 681.

In light of the foregoing, we turn to the submitted petition.  The attorneys for the Musil class have submitted their petitions using the lodestar formula, supplying the necessary information concerning their normal billing rates along with reams of billing records which adequately demonstrate that the petitioned for fees are supported.  They also argue for an upward adjustment to the lodestar for work performed before January 1, 1989; the distinction in time being based upon the breakthrough settlement in their litigation, which significantly reduced the risk factor.  The total lodestar, before adjustment, amounts to $1,587,411.75, or approximately 15.5% of the total recovery.[4] The total requested fee, after lodestar adjustment is $2,715,204.36, or approximately 26.5% of the total recovery.

Applying the percentage of recovery method, as we have determined to do, we find that amount of recovery, $10,230,000.00, justifies an award to counsel of 20%.  In making this determination, we take into consideration how the total recovery herein compares to recoveries in other class actions.

---

4. As 11,385.10 attorney and paralegal hours have been documented, the average cost per hour works out to $139.43.

See 3 H. Newberg, supra at 190. We find that a percentage award of 20% is in keeping with the sliding scale approach. We therefore award plaintiffs' counsel the amount of $2,046,000.00 in attorney's fees.

This does not, however, end the discussion. We deal here with not one, but two law firms who acted as co-counsel, as well as another firm which acted as liaison counsel.[5] We are satisfied from the billing records that the work of the three firms was not repetitive; we are satisfied from the manner in which the law suit was prosecuted that all firms were necessary to the ultimate outcome of the litigation. There remains the question of how we divide the total award among them. Each firm undertook different aspect of the class representation, dividing the work between them. They did not however spend the identical amount of attorney and staff time on the matter.

Sachnoff & Weaver spent a total of 6,293.25 hours on the case, of which 2,650 or 42.1% of the total, were performed by partners; 1897.75 or 30.15% were performed by associates; 1746.50 or 27.75% were performed by legal assistants, law clerks or

---

5. Hammons & Hunter acted as liaison counsel and local counsel in the companion Whalen class action as well. Attorney Cheryl Hunter has provided the court with affidavits in both cases verifying that she scrupulously kept separate the time she devoted to each action, billing to each only the time spent on each action. Where her activities encompassed both actions, the time was divided equally between the two, rather than being billed in whole to each. The court is satisfied from a detailed review of the her billing records and the affidavits of counsel, that no duplication of time has occurred.

document clerks. Green, Hoffmann spent a total of 4,802.85 hours on the case, of which 2121.10 or 44.16% of the total were performed by partners; 1650.50 or 34.37% were performed by associates; 1031.23 or 21.47% were performed by legal assistants, law clerks or document clerks. Hammons & Hunter spent a total of 289 hours on the case, of which 68 or 23.5% of the total were performed by partners; 0.75 or 0.003% by associates; 220.75 or 76.4% were performed by legal assistants. Therefore, were the court to apply a simply ratio of each firms' hours to the total fee award to divide it among the firms, the result would not be equitable. Rather, a ratio utilizing the firms' unadjusted lodestars will equitably divide the total award among them. These figures take into account the firms' different billing rates for their partners, associates and paralegals.

Sachnoff & Weaver's unadjusted lodestar is $885,603.75 or 55.789% of the total unadjusted lodestar. Green, Hoffmann's unadjusted lodestar is $682,043.00 or 42.966% of the total. Hammons & Hunter's unadjusted lodestar is $19,765.00 or 1.245% of the total. Applying these percentages to the total award of $2,046,000.00, Sachnoff & Weaver is awarded a fee of $1,141,442.90; Green, Hoffmann is awarded a fee of $879,084.40; Hammons & Hunter is awarded a fee of $25,472.70.

We note at least one commentator has suggested that in order to avoid allowing the kind of windfall fee awards which depressed support for the percentage of recovery method in the

- 14 -

first place, courts should compare the level of compensation to be granted under the percentage approach with that which the lodestar time formula would produce. Coffee, Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working, 42 Md. L. Rev. 215, 268 (1983). In this case, either approach yields substantially the same award. As discussed, counsel for the class documented a collective expenditure of over 11,000 attorney and paralegal hours during the course of this action. Our percentage award falls squarely between the unadjusted lodestar and counsels' requested adjusted lodestar. Further, were we to have opted to use the lodestar approach, counsel would have qualified for a moderate multiplier.

## IV.

Plaintiffs' counsel also have moved the court to award them aggregate costs of $241,139.78 which they have incurred in prosecuting this lawsuit. The attorneys have provided the court with a schedule of expenses broken down into various categories, as well as computer records substantiating the totals. After reviewing the law firms' supporting records and affidavits, the court finds that the amounts are adequately documented, proper and reasonable. Accordingly the court will allow these expenses to be paid from the common fund. Sachnoff & Weaver is awarded $159,229.41; Green, Hoffmann is awarded $74,689.08; Hammons & Hunter is awarded $7,151.29.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

IN RE: SAVINGS INVESTMENT
SERVICE CORPORATION LOAN
COMMITMENT LITIGATION

MDL NO. 718

EDWIN J. MUSIL, JR.

vs.

NO. CIV-87-560

THE HEITNER CORPORATION, et al.

ORDER

Class counsels' Joint Petition for Award of Attorneys' Fees and Reimbursement of Expenses is GRANTED. The following amounts are authorized to be paid out of the settlement fund:

Sachnoff & Weaver, Ltd. is AWARDED $1,141,442.90 in fees and $159,229.41 in expenses.

Green, Hoffmann & Dankenbring is AWARDED $879,084.36 in fees and $74,689.08 in expenses.

Hammons & Hunter is AWARDED $25,472.70 in fees and $7,151.29 in expenses.

IT IS SO ORDERED.

_____
CHARLES R. WEINER
ENTERED IN JUDGMENT DOCKET ON JANUARY 31, 1990

- 16 -